**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Spiros E. Gonakis, Sr.,** ) | **CASE NO. 1:16 CV 2042** |
| ) | |
| Plaintiff, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Medmarc Casualty Insurance Company,** ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant Medmarc Casualty Insurance Company's Motion for Summary Judgment (Doc. 13). This lawsuit arises out of Medmarc's denial of insurance coverage to Plaintiff Spiros Gonakis, an attorney, for a legal malpractice claim brought against him in the Cuyahoga County Court of Common Pleas. Gonakis seeks a declaration that Medmarc has a duty to defend and indemnify him with regard to the litigation. For the reasons that follow, Medmarc's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

**FACTS**

**A. The underlying lawsuit**

In December of 2011, Gonakis represented Rolvow Properties, LLC, in a real estate transaction involving Rolvow's sale of an apartment building to Classic Victor, LLC. Gonakis was retained to review the real estate purchase agreement, promissory note, and mortgage. Title to the apartment building transferred to Classic Victor on January 9, 2012, and Gonakis's representation of Rolvow ceased.

Subsequently, Classic Victor breached the parties' purchase agreement and defaulted on the promissory note and mortgage that it had executed in Rolvow's favor to secure financing for the sale. On December 21, 2015, Gonakis received a letter from attorney Stephen Thomas on behalf of Rolvow. The letter was addressed to Gonakis and five other individuals or entities: Edwin P. Pigman, Esq; Michael Burrington; Brian Stark; Bill Dragolis, and Howard Hanna Real Estate Services. The letter stated in part that Rolvow had hired Thomas to "prosecute claims for damages arising from...the sale" of the apartment building. It reads in full:

> Gentlemen:
>
> The undersigned has been retained by Brian McMillin in his capacity as Managing Member of Rolvow Properties, LLC, to prosecute claims for damages arising from your separate involvements (as applicable) in the sale by Rolvow Properties, LLC of the apartment building located at 2587 Noble Road, Cleveland Heights, Ohio to Classic Victor, LLC, and/or the impact of those events on the collateral foreclosure proceedings pending in the Cuyahoga County Court of Common Pleas, as Case No. 832926.
>
> The subject sale consummated when title transferred on or about January 9, 2012, as a result of negotiations during the period of December 15, 2011 through December 30, 2011, in which all of you but Mr. Pigman were involved.
>
> Please refer this letter to the carrier of your professional liability, errors and omissions or comprehensive liability insurance policy, or to your legal adviser if

2

> you do not maintain any such coverage.
>
> Due to the potential expiration next week of the four-year statute of limitation that applies to Michael Burrington, a Complaint will be commenced against Mr. Burrington and Howard Hanna Real Estate Services while the undersigned investigates allegations of fraud against Mr. Stark and Mr. Dragolis, and the negligent failure of persons other than Mr. Stark and Mr. Dragolis to protect Rolvow Properties, LLC from the professionally-foreseeable risks that have been discovered recently by Mr. McMillin, arising from anticipated deficiencies in foreclosure proceedings pending against Classic Victor, LLC.
>
> Sincerely,
> /s/ Stephen G. Thomas

After receiving the letter, Gonakis searched the Cuyahoga County Common Pleas Court docket and discovered that a foreclosure action on behalf of Rolvow and against Classic Victor had been filed on September 17, 2014, by attorney Pigman. His review of the docket also revealed that on October 14, 2015, Pigman's motion for summary judgment was denied because Pigman had not filed a required preliminary judicial report/title commitment. Gonakis states that, based on his reading of the Thomas letter and the foreclosure action, he concluded the following:

- The phrase "as applicable" in the first paragraph of the Thomas letter meant that the letter did not apply to Gonakis.
- The reference to "the negligent failure of persons other than Mr. Stark and Mr. Dragolis to protect Rolvow...arising from the anticipated deficiencies in foreclosure proceedings pending against Classic Victor, LLC" only applied to Pigman's representation of Rolvow in the foreclosure action, not to Gonakis.
- Thomas was simply conducting an investigation, the investigation had not yet been concluded, Gonakis should preserve his file, and Thomas may contact Gonakis as part of his investigation.
- The Thomas letter was a letter of representation advising Gonakis of the possibility of litigation against Pigman, Burrington, Stark and/or Dragolis.

Because Gonakis determined that Rolvow was not bringing any allegations of malpractice against him, he did not forward the Thomas letter to his professional liability insurance carrier at the time, Professional Solutions Insurance Company ("PSIC").

3

On April 4, 2016, Rolvow served Gonakis with its First Amended Complaint in the matter captioned as Rolvow Properties, LLC v. Michael Burrington, et al., Cuyahoga County Court of Common Pleas. In it, Rolvow named Gonakis as a defendant and brought one claim of legal malpractice against him. Gonakis had not been named as a defendant in the original complaint.

### B. **Gonakis's insurance policy**

On January 12, 2016, Gonakis completed and signed an Application for Professional Liability Insurance with Medmarc. The application stated that "[o]nly claims that are first made against the insured and reported to the Company during the policy term are covered, subject to the policy provisions" and warned that incomplete or inaccurate information "could lead to a denial of coverage." The application also included the following questions:

G. Has any lawyer listed in Question 3.K., or on the Larger Firm Supplement:

\*\*\*

iv. become aware of any act, error, omission or specific circumstances which could reasonably be expected to result in a professional liability claim against the firm, any past or present lawyers in the firm, or any predecessor firm?

\*\*\*

v. become aware of any client, client representative, or lawyer who has made an oral or written threat of filing a lawsuit or filing a grievance with a regulatory board?

Gonakis answered "no" to these questions and also stated that he had reported "all claims, potential claims and incidents." Gonakis did not disclose the Thomas letter to Medmarc at the time of his application.

The relevant provisions of Gonakis's Medmarc policy are as follows:[1]

**SECTION 1. DEFINITIONS**

**Claim** means a demand or suit for damages received by the **Insured**, including any arbitration proceedings to which the **Insured** is required to submit or to which the **Insured** has submitted with the **Company's** consent.

**2.1 WHAT THIS POLICY INSURES**

2.1.1. The **Company** will pay on behalf of the **Insured** all sums up to the Limit of Liability ... that the **Insured** shall become legally obligated to pay as **damages** because of any **claim** or **claims**, including **claim(s)** for **personal injury**, <u>first made against the **Insured** and first reported to the **Company** during the **policy period**</u>, involving any act, error, or omission in rendering or failing to render **professional services** by the **Insured** or by any person for whose acts, errors, or omissions the Insured is legally responsible, <u>provided that the act, error, or omission first occurred on or after the **Retroactive Date** and that no **Insured** knew or should have known of facts that reasonably could have been expected to result in a **claim** prior to the effective date of this **policy**</u>.

**2.2. WHEN A CLAIM IS FIRST MADE**

A **claim** is first made against the **Insured** at the earlier of the following:

a) when the **Insured** first receives written notice that a **claim** has been made; or

b) <u>when the **Insured** first receives information of specific circumstances involving a particular person or entity that could reasonably be expected to result in a **claim**</u>....

All **claims**, including claims for **personal injury**, involving a single act, error, or omission or a series of related acts, errors, or omissions shall be deemed to be one **claim** and to be first made when the first of such **claims** is made.

**2.3. WHEN A CLAIM IS FIRST REPORTED**

A **claim** is first reported to the **Company** at the earlier of the following:

a) when the **Company** first receives notice from the **Insured** that a **claim** has

---

[1] Words in bold are bolded in the original as defined terms in the policy. Underlining indicates the language at issue in this dispute.

5

been made; or

b) <u>when the **Company** first receives notice from the **Insured** of the specific circumstances involving a particular person or entity that could reasonably be expected to result in a claim....</u>

**SECTION 3. DEFENSE AND SETTLEMENT**

**3.1. DUTY OF DEFENSE**

The **Company** has the right to investigate and settle **claims**, and the Company will defend, subject to the Limit of Liability shown in Item 4 of the Declarations and as explained in Section 5, any suit or arbitration seeking **damages** against the **Insured** to which this **policy** applies…

**SECTION 4. EXCLUSIONS**

**4.1. WHAT THIS POLICY DOES NOT INSURE**

This policy does not apply to:

***

s) any **claim**, disciplinary action, or other legal action involving any circumstance, act, error, or omission (1) disclosed in the information and representation made by the **Insured** in connection with the application submitted to the **Company** prior to the **continuous coverage effective date**; (2) reported to another insurance carrier prior to the **continuous coverage effective date**; or (3) <u>that occurred prior to the **continuous coverage effective date**, if on that date, the **Insured** knew or believed, or had reason to know or believe, that the circumstance, act, error, or omission might reasonably be expected to result in a claim, disciplinary action, or other legal action against the **Insured**</u>.

Immediately after receiving Rolvow's First Amended Complaint in April of 2016, Gonakis tendered it to his Medmarc insurance agent along with a copy of the Thomas letter. On April 22, 2016, Medmarc responded that "no coverage is available for the Rolvow Claim and Lawsuit" because Gonakis's policy only covered claims made and reported within the Policy period. The denial noted that the Thomas letter "provided [Gonakis] with information of specific circumstances involving Mr. McMillin and Rolvow Properties, LLC which could be reasonably

6

expected to result in a claim. Therefore, [he] knew or should have known of facts that reasonably could have been expected to result in a claim at the time [he] received the December 18, 2015 letter."

Gonakis filed a declaratory judgment action against Medmarc in the Cuyahoga County Court of Common Pleas on July 14, 2016, seeking a declaration that Medmarc owes a duty to defend and indemnify him in the Rolvow malpractice lawsuit and recovery of monetary damages, including punitive damages, for an alleged bad faith denial of insurance coverage. Medmarc then removed the case to this Court on the basis of diversity jurisdiction. Pending before the Court are the parties' cross-motions for summary judgment.

### **SUMMARY JUDGMENT STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting

7

summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

A court sitting in diversity applies the law of the forum state. *Schwartz Manes Ruby and Slovin, L.P.A. v. Monitor*, 483 Fed. Appx. 241, 244 (6th Cir. 2012). The parties agree that Ohio law governs the Medmarc policy.[2] Under Ohio law, the interpretation of an insurance policy is a matter of law. *Id.* (citing *City of Sharonville v. Am. Emp'rs Ins. Co.*, 109 Ohio St. 3d 186, 846 N.E.2d 833, 836 (2006)). When interpreting an insurance contract, a court must give the provisions and terms in the contract a reasonable construction. *Hillyer v. State Farm Mut. Auto Ins. Co*, 131 Ohio App. 3d 172, 177 (Ohio Ct. App. 1999). If a provision or term in the policy is ambiguous, the policy is to be interpreted strictly against the insurer and liberally in favor of the insured. *Westfield Ins. Co. v. Hunter*, 128 Ohio St. 3d 540, 948 N.E.2d 931, 935 (2011). Policy exclusions are interpreted as applying "only to that which is *clearly* intended to be excluded." *Sharonville*, 846 N.E.2d at 836 (emphasis in original) (citation omitted).

The Medmarc policy is a "claims-made" policy, meaning that it only protects the insured for claims made and reported within the policy period. *Mueller v. Taylor Rental Ctr.*, 106 Ohio

---

[2] The parties did not engage in a choice of law analysis or point to a choice of law provision in the policy, but both cite to and rely on Ohio law throughout their briefing.

9

App. 3d 806, 810 (Ohio App. 1995). Unlike an occurrence policy, a claims-made policy is designed to limit liability to a fixed period of time. *Id.* Medmarc argues that it has no duty to defend Gonakis against the Rolvow malpractice lawsuit because the policy only covers a claim if it is first made during the policy period and "no insured knew or should have known of facts that reasonably could have been expected to result in a claim prior to the [policy's] effective date." (Policy, § 2.1); (*see also id.* § 2.2(b)). Medmarc asserts that Gonakis could have reasonably expected the Rolvow lawsuit once he received the Thomas letter. It also argues that the claim is excluded under Section 4.1 because the policy excludes any claim "that occurred prior to the continuous coverage effective date, if on that date, the Insured knew or believed, or had reason to know or believe, that the circumstance, act, error, or omission might reasonably be expected to result in a claim...against the Insured."[3] Gonakis counters that he had no reasonable basis to foresee the Rolvow lawsuit prior to the policy's effective date and that he complied with the policy's reporting requirements by giving notice of the lawsuit during the policy period.

Both parties agree that the relevant policy language is whether Gonakis was aware of facts or should have known of facts that "reasonably could have been expected to result in a claim."[4] The parties also agree that this language employs a mixed subjective-objective analysis

---

[3] Medmarc also argues that the claim falls under the exclusion for claims relating to the rendering of investment advice. The Court need not address this argument because it concludes that the policy does not cover the claim since Gonakis knew of facts that reasonably could have been expected to result in a claim prior to the policy's effective date.

[4] Section 2.2(b) uses similar language: A claim is first made when the Insured first receives information of specific circumstances involving a particular person or entity that "*could reasonably be expected to result in a claim.*" Similarly, Section 4.1(s) excludes any claim that occurred prior to the effective date if the insured knew or had reason to know "that the circumstance, act, error, or omission *might*

10

to determine whether an insured could "reasonably expect" that particular acts could result in a claim. The question of what facts Gonakis knew is a subjective inquiry, while the question of whether he could reasonably expect that these facts might give rise to a claim is an objective inquiry based on a "reasonable insured" standard. *Schwartz*, 483 Fed. Appx. at 245.

Gonakis argues that the phrase "reasonably could have expected to result in a claim"–which the policy does not define–is ambiguous and must be construed against Medmarc. The Southern District of Ohio has interpreted this same language and determined that it is ambiguous because it is susceptible of two meanings: it could require reporting whenever there is any possibility of or potential for a claim, or it could require reporting only when a claim is reasonably probable. *Professionals Direct Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co.*, 2009 WL 4281263, at *11-13 (S.D. Ohio Nov. 24, 2009). Having found that the language was ambiguous, the court construed it against the insurer and interpreted it to mean that the insured was only required to report claims that were "reasonably probable, reasonably likely to happen, or reasonably certain." *Id.* at * 13. Using this construction, the court found that there was a question of fact as to whether the insured, a law firm faced with a malpractice claim, had met the reporting requirement by waiting to give notice of the claim until after the Ohio Supreme Court ruled against its client in the underlying litigation. In denying summary judgment to the insurer, the court noted that the underlying litigation was still pending during the applicable time period, there was a reasonable probability that it would resolve favorably for the firm's client, and the firm's client had not indicated in any way that it believed that the firm had committed

---

*reasonably be expected to result in a claim.*"

11

legal malpractice or that it was considering bringing such a claim. *Id.*[5]

Here, even if the Court liberally construes the undefined language at issue ("reasonably could have been expected to result in a claim") in favor of Gonakis, a reasonable insured would have expected a malpractice claim by Rolvow after receiving the Thomas letter. After receiving the letter on December 21, 2015, Gonakis was aware that Rolvow was represented by new counsel, Stephen Thomas, and that Rolvow had retained Thomas to prosecute claims for damages arising from the addressees' separate involvements in the sale of Rolvow's apartment building "***and/or*** the impact of those events on the foreclosure proceedings in the Cuyahoga County Court of Common Pleas." Thus, the letter was clear that the claims would relate to *both* the real estate transaction–for which Gonakis was Rolvow's attorney–and the foreclosure proceedings. The letter advised all addressees, without exception, to refer the letter to their professional liability insurers. Finally, Thomas informed the addressees that he was filing a lawsuit against Burrington and Howard Hanna because of a statute of limitations issue and that he was investigating allegations of fraud against Stark and Dragolis and negligence against "persons other than Stark and Dragolis." While the letter did not identify Gonakis and Pigman as the subject of the negligence claims, it is reasonably probable that Thomas meant that Gonakis

---

[5] The Sixth Circuit in *Schwartz* addressed similar policy language–whether an insured could "reasonably foresee" that particular acts "might reasonably be expected to be the basis of a claim." It cited *Wiles* but did not decide whether this language was ambiguous because even under the more favorable interpretation, a reasonable attorney would have expected that a malpractice claim by the insured's (a law firm) former client was reasonably probable. *Schwartz*, 483 Fed. Appx. at 246 (noting that the firm was aware that it was counsel of record listed on a court docket in a lawsuit pending against its client, that it failed to appear at a scheduled trial, that its failure to appear resulted in the entry of an adverse judgment against its client, and that its client had retained new counsel who was aware of the judgment).

and Pigman were the subject of such claims because all other addressees had already been expressly identified as the subject of other claims. Any reasonable attorney in possession of these facts would have realized that a claim by Rolvow against Gonakis was at least reasonably likely.

Gonakis's interpretation of the Thomas letter–that it does not apply to him, that all addressees except for him would be the subject of a lawsuit by Rolvow, and that Thomas was conducting an investigation and wanted Gonakis to preserve his file because Thomas might contact him as part of the investigation–is simply not supported by the language of the letter. The letter was addressed to all recipients collectively, made no exceptions for Gonakis, and clearly stated in the first paragraph that Rolvow had hired Thomas to prosecute claims against the recipients. ("*Gentlemen*: The undersigned has been retained by Brian McMillin in his capacity as Managing Member of Rolvow Properties, LLC, to prosecute claims for damages arising from *your separate involvements* (as applicable)....")[6]

Gonakis notes that Rolvow had not contacted him in the four years following the real estate transaction, that Rolvow had never complained about Gonakis's representation, that the statute of limitations on a malpractice claim is one year, that the foreclosure proceedings still had a reasonable possibility of resolving in Rolvow's favor at the time of the Thomas letter, and that the final paragraph of the letter states that Thomas was simply "investigating allegations." In

---

[6] Gonakis argues that he interpreted "as applicable" to mean that the letter did not apply to him. But this is not an objectively reasonable interpretation given the salutation and the rest of the letter. Rather, the reasonable interpretation is that "as applicable" referred to the addressees' particular involvement in either the real estate transaction or the foreclosure proceedings, both of which would be the subject of separate claims that Thomas was going to file on behalf of Rolvow.

13

addition, he believes that he had ably represented Rolvow. These facts would weigh strongly in favor of Gonakis had the letter not explicitly stated that Rolvow had hired Thomas to prosecute claims arising, in part, from the real estate transaction for which Gonakis had represented Rolvow or directed all recipients to refer the letter to their respective professional liability insurance carriers. But in light of these statements, the only objectively reasonable conclusion that an attorney could have come to was that Rolvow was reasonably likely to file a lawsuit against Gonakis. Moreover, Gonakis's subjective belief that a malpractice claim would be meritless is beside the point because the objective prong of the relevant policy provisions does not address the insured's subjective belief as to the merits of a possible claim or whether he had committed a wrongful act.[7] Instead, the question is whether the letter gave Gonakis a basis to reasonably expect a claim by Rolvow.

The Thomas letter, which Gonakis received several weeks prior to the effective date of the Medmarc policy, gave Gonakis a basis to reasonably expect that Rolvow would file a claim against him. Therefore, the Medmarc policy does not apply to the claim and Medmarc owes no duty to defend or indemnify Gonakis for the claim.

---

[7] *See Carosella & Ferry, P.C. v. TIG Ins. Co.*, 189 F. Supp. 2d 249 (E.D. Pa. 2001) ("Carosella argues that no reasonable attorney in Carosella's place would have foreseen the Bradley's claim because the suit threatened in the letter was utterly without merit and because Carosella knew that it had ably represented the Bradleys....However, the relevant provision does not deal with the question of whether the insured knew or should have known that it had committed a wrongful act. Rather, the relevant question is whether there was a reasonable basis to foresee that a claim would be made. Carosella appears to confuse the two questions."); *Minnesota Lawyers Mut. Ins. Co. v. Hahn*, 355 F. Supp. 2d 104, 110 (D.D.C. 2004) ("Defendants need not admit to the merit of th[e] potential claim..., and the failure of defendants to give MLM the required notice cannot be excused by a well-founded belief in non-liability.").

**CONCLUSION**

For the foregoing reasons, Medmarc's Motion for Summary Judgment (Doc. 13) is GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED.

IT IS SO ORDERED.

                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      United States District Judge

Dated: 4/13/17